**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STERLING AND WILSON SOLAR SOLUTIONS INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:23-cv-01110-MEM |
| v. | ) | (Mannion, Judge) |
| | ) | |
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

**BRIEF IN SUPPORT OF PLAINTIFF STERLING AND WILSON**
**SOLAR SOLUTIONS INC.'S MOTION FOR TEMPORARY**
**RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

In this action to enjoin payment upon a standby letter of credit because honoring the payment demand would facilitate a fraud, plaintiff Sterling and Wilson Solar Solutions Inc. ("Sterling"), submits pursuant to LR 7.5 this brief in support of its motion for a temporary restraining order and preliminary injunction.

## PRELIMINARY STATEMENT

Sterling applied to defendant Bank of America, N.A. ("BANA") for a $24.34 million letter of credit, naming Montague Solar, LLC ("Montague") as beneficiary. Sterling sought and obtained the letter of credit in connection with Sterling's provision of services under an Engineering, Procurement and Construction Agreement (the "EPC Agreement") entered into by and between Sterling and Montague. Sterling agreed to obtain the letter of credit for the purpose of

guaranteeing Sterling's performance as contractor on a solar facility in Oregon State owned by Montague.

Pursuant to the EPC Agreement, Montague was prohibited from drawing on the BANA letter of credit unless Sterling was in default of its obligations as a result of failure to achieve substantial completion, failure to maintain insurance coverage, insolvency, or other events of default specifically defined and enumerated in the EPC Agreement.

An attempt is being made to draw on the BANA letter of credit. Any such attempt is fraudulent because, under the operative contract, Sterling is not in default. Sterling has substantially completed the solar facility, as Montague admitted when it issued a Commercial Operation Certificate confirming that the project achieved commercial operation and that all operational permits had been secured. Moreover, Sterling has not failed to maintain insurance coverage, become insolvent, or otherwise triggered an event of default under the EPC Agreement.

Sterling has sought to determine what justification, if any, is being offered for a request that completely contravenes the provisions of Sterling's engagement. To date, Montague and its parent company, Avangrid Inc., have refused to supply information to justify their payment demand under the letter of credit. At the very least, Sterling needs time to investigate the wholly unjustifiable effort to draw down

$24.34 million on the EPC letter of credit, which Sterling believes was demanded through a fraudulent attestation of default by Montague.

## PROCEDURAL HISTORY

No substantive activity has taken place in this action between the filing of Sterling's Complaint on July 3, 2023, and the filing of Sterling's Motion for Temporary Restraining Order and Preliminary Injunction.

## FACTS

On March 29, 2021, Sterling entered into the EPC Agreement with Montague for the development of a solar power facility in Oregon (the "Project"). *See* Declaration of Gaurav Bhandari ¶¶ 1 & 4 & Ex. B, a copy of which is attached, together with the exhibits thereto, as **Exhibit 1** to the underlying Motion for Temporary Restraining Order and Preliminary Injunction.[1] Montague is a subsidiary of Avangrid Renewables, LLC ("Avangrid"). *Id.* at ¶ 10. Under the EPC Agreement, Sterling served as a contractor to Montague, responsible for the design, engineering, and construction of the Project. *Id.* at ¶ 4.

Section 3.21.3 of the EPC Agreement required Sterling to provide a letter of credit for Montague. *Id.* at ¶ 5 & Ex. B. Section 3.21.3 further provided that any

---

[1] The EPC Agreement attached to the Bhandari Dec. is filed on the public docket in redacted form. Sterling has served BANA with an unredacted copy of EPC Agreement with its Motion and a motion for leave to file under seal an unredacted copy of the EPC Agreement with this Court is forthcoming.

payment would be made under the letter of credit only if one of two conditions was met: (A) the occurrence of a "Contractor Event of Default" or (B) the failure to renew the letter of credit within 30 days of its expiration date or the failure of the issuing bank to maintain its creditworthiness. *Id*. at ¶ 6 & Ex. B.

Section 20.1 of the EPC Agreement outlines the conditions for a "Contractor Event of Default." *Id*. at ¶ 7 & Ex. B. These conditions are limited to specifically enumerated events, none of which Montague asserted to BANA was applicable, and none of which are applicable. *Id*.

Pursuant to the EPC Agreement, Sterling applied to BANA for a letter of credit. *Id.* at ¶¶ 1 & 4. BANA issued the BANA letter of credit for $24.34 million on May 12, 2021. *See* Bhandari Decl. Ex. A. The BANA letter of credit states that the beneficiary is Montague. *Id*. at ¶ 1 & Ex. A. The BANA letter of credit states that BANA will make payment to Montague only upon receipt of a certification by Montague that (i) Sterling "failed to perform its obligations" under the EPC Agreement and, as a result, the beneficiary is entitled to the full amount claimed, or (ii) the letter of credit will expire in less than 30 days and Sterling failed to obtain a replacement letter of credit. *Id*. at ¶ 13 & Ex. A.

Sterling has performed its obligations under the EPC Agreement. *Id.* at ¶ 8. Montague has confirmed to the public utility that oversees the Project, that the Project was substantially complete. Bhandari Decl. ¶ 8 & Ex. C. Montague's signed

statement to this effect came in the form of a Commercial Operation Certificate that it issued on April 19, 2023, confirming that the project achieved commercial operation and that all operational permits had been secured. *Id*. The Commercial Operation Certificate was acknowledged and confirmed by a licensed professional engineer in an April 21, 2023 letter. *See id*. at ¶ 9 & Ex. D.[2] Moreover, Montague endorsed a Certification of Commercial Operation ("CCO") from NEI Electric Power Engineering, Inc ("NEI"), dated April 14, 2023, certifying that the project "is able to generate electric power reliably, in amounts and quality expected by the Agreement and in accordance with all other terms and conditions of the Agreement." *See id*. at Ex. E.  Sterling has pending liens against Montague in the amount of approximately $43 million. *See id*. at ¶ 11.

On or about June 23, 2023, Montague demanded payment upon the BANA letter of credit, in full, in the amount of $24.34. *See id*. at ¶ 2 & Ex. A. By its terms, the BANA letter of credit states that states that any payment demand must be accompanied by a certification stating that Sterling "failed to perform its obligations" under the EPC Agreement and which certification would be contrary to the admissions made by Montague and its parent company in their certifications and press releases concerning the Project. *See id*. at ¶¶ 13-14. There is no "Contractor

---

[2] Exhibit D inadvertently was attached to the Bhandari Declaration in duplicate as Exhibit F. Any references in the Bhandari Declaration to Exhibit F should be understood as references to Exhibit D.

Event of Default" that would justify a payment demand on the BANA letter of credit. *Id.* at ¶ 7.

Sterling has advised BANA of the fraud and asked BANA to agree not to honor the request for payment on the BANA letter of credit until the fraud is addressed either criminally or civilly or both, but BANA has failed to respond to the request, thus necessitating the present application for relief. *See id.* at ¶ 15.

## STATEMENT OF QUESTIONS INVOVLED

**Question:**   Whether Sterling is entitled to an Order temporarily restraining and enjoining BANA from honoring Montague's request for payment on the BANA letter of credit where the contractual conditions for a payment demand have not been met, where Montague's outstanding liabilities to Sterling far exceed the letter of credit amount, and where payment by BANA on the letter of credit would substantially and irreparably harm Sterling's financial standing and reputation?

**Suggested Answer:**     *Yes*

## ARGUMENT

Sterling is entitled to a temporary restraining order and preliminary injunction. To obtain a preliminary injunction, the plaintiff must "meet the threshold for the first two 'most critical' factors: it must demonstrate that it can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not) and that it is more likely than not to suffer irreparable harm in the

absence of preliminary relief." *See Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). "If these gateway factors are met, a court then considers the remaining two factors [possibility of harm to other interested persons, and the public interest] and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id*. A motion for temporary restraining order is governed by the same factors. *See Verma v. Doll*, 2020 WL 1814149, at *3 n.2 (M.D. Pa. Apr. 9, 2020) ("Temporary restraining orders and preliminary injunctions are governed by "nearly identical factors," the principal distinctions being in procedure and effect.").

## I.     PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS

Although courts do not often interfere with executory letter of credit transactions, the "well-established exception to the rule" is where there is fraud in the transaction.[3] *Semetex Corp. v. UBAF Arab Am. Bank*, 853 F.Supp. 759, 773 (S.D.N.Y. 1994), *aff'd*, 51 F.3d 13 (2d Cir. 1995); *see also Rockwell Int'l Sys., Inc. v. Citibank, N.A.*, 719 F.2d 583, 589 (2d Cir. 1983) (a bank's obligation under a letter of credit does not extend to protect a party that seeks to "run off with [the] plaintiffs money on a *pro forma* declaration which has absolutely no basis in fact"); *United Bank Ltd. v. Cambridge Sporting Goods Corp.*, 41 N.Y.2d 254, 259 (1976) (issuer of letter of credit may be enjoined from making payment when there is fraud in the

---

[3] As discussed above, the BANA letter of credit is governed by New York law.

transaction); *Archer Daniels Midland Co. v. JP Morgan Chase Bank*, N.A., No. 11 Civ. 0988 (JSR), 2011 WL 855936, at *5 (S.D.N.Y. Mar. 8, 2011) (granting temporary restraining order and preliminary injunction to prohibit issuing bank from paying on letter of credit under the fraud exception); *accord* N.Y. U.C.C. § 5-109 (McKinney) (providing that a court may temporarily or permanently enjoin an issuer from paying on a letter of credit where not doing so would facilitate a fraud).

In *Archer Daniels Midland*, the plaintiff applicant successfully obtained injunctive relief to prevent JP Morgan Chase from honoring payment to a beneficiary of a standby letter of credit. 2011 WL 855936, at *5. The plaintiff had sold a quantity of rice to the Grain Board of Iraq ("GBI"), and the delivery of such rice (and the quality of same) was assured by a standby letter of credit. *Id.* at *1. GBI attempted to draw on the letter of credit based on allegations that, upon delivery, the quality of the rice was deemed nonconforming. *Id.* at *2. However, based on evidence that the quality of the rice was in fact satisfactory, the court found that plaintiff had established "fraud in the transaction" and granted the requested preliminary injunction. *Id.* at *6.

That holding applies with equal force here. Montague seeks payment under the BANA letter of credit based on false assertions that Sterling failed to perform under the EPC Agreement. *See* Bhandari Decl. ¶¶ 1-2 & 14 & Ex. A. But according to the EPC Agreement, to seek payment under the letter of credit, Montague must

demonstrate a "Contractor Event of Default" as a result of Sterling's failure to achieve substantial completion, failure to maintain insurance coverage, insolvency, or other specifically defined and enumerated events. *See id.* at ¶¶ 5-7 & Ex. A. Montague has not done that here. *Id.* at ¶ 7; *see also* Declaration of Bahadru Sam Dastoor ¶5, a copy of which is attached to the underlying Motion for Temporary Restraining Order and Preliminary Injunction as **Exhibit 2**. To the contrary, Montague issued a statement certifying that the project "is able to generate electric power reliably, in amounts and quality expected by the Agreement and in accordance with all other terms and conditions of the Agreement." Bhandari Decl. ¶ 9 & Ex. E.

Thus, just as in *Archer Daniels Midland*, the request for payment on the BANA letter of credit is a "fraud in the transaction," and Sterling is entitled to injunctive relief. At a minimum, Montague cannot draw upon the BANA letter of credit until it provides evidence to support its assertion in the payment demand that, contrary to Montague's prior admissions, the Project is not substantially complete.

Furthermore, as Montague is aware, Sterling has pending liens against Montague in the amount of approximately $43 million. *See* Bhandari Decl. ¶ 11. This lien amount represents a good faith dispute over payment, and must be offset against any amount to which Montague claims it is entitled, but Montague has never explained how it can be entitled to anything under the letter of credit when the amount of Sterling's liens against Montague exceeds the amount of the letter of

credit. Given the absence of a "Contractor Event of Default," and Montague's demand for payment when the amount of Sterling's liens against Montague exceeds the amount of the letter of credit, Montague's demand for payment under the letter of credit is part of a fraudulent scheme.

## II.   ABSENT INJUNCTIVE RELIEF, STERLING WILL BE IRREPARABLY HARMED

Sterling would be irreparably harmed absent equitable relief. Irreparable harm exists when there is a substantial chance that upon final resolution of the action, Sterling cannot be returned to the position it previously occupied. *See Guardian Life Ins. Co. of Am. v. Est. of Cerniglia*, 446 F. App'x 453, 456 (3d Cir. 2011) (quoting *Brenntag Int'l. Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) ("irreparable harm is found 'where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied.'")).

It is well settled that a threat to the continued existence of a business can constitute irreparable injury. For example, in *Minard Run Oil Co. v. U.S. Forest Serv.*, the Third Circuit affirmed the district court's refusal to enter a preliminary injunction.  670 F.3d 236, 255 (3d Cir. 2011). Although the Third Circuit recognized that purely economic injury generally does not qualify as irreparable harm, "an exception exists where the potential economic loss is so great as to threaten the existence of the movant's business." *Id*. (quoting *Vaqueria Tres Monjitas, Inc. v.*

*Irizarry*, 587 F.3d 464, 485 (1st Cir.2009)). Therefore, the court ruled that a moratorium on new drilling "causes irreparable injury to mineral rights owners by depriving them of the unique oil and gas extraction opportunities afforded them by their mineral rights." *Id.*; *see also Doran v. Salem Inn, Inc.,* 422 U.S. 922, 932 (1975) (holding that irreparable injury was shown where the plaintiff "would suffer substantial loss of business and perhaps even bankruptcy absent injunctive relief.")

Similarly, here, payment pursuant to the BANA letter of credit would create a cascading disruption that would threaten Sterling's ability to continue building solar facilities. Dastoor Decl. ¶ 6. News that Sterling has had a letter of credit drawn upon is likely to quickly spread throughout the global banking sector, as well as the global renewable energy sector. Dastoor Decl. ¶ 8. A $24.34 million draw likely will affect both Sterling's and its parent company's credit worthiness, which could and likely would cause the banking institutions involved in this matter (some of the world's largest and most respected) as well as other institutions to become less likely to provide letters of credit to Sterling in the future (letters of credit are required for nearly all large-scale renewable energy projects across the world). *Id.* at ¶ 10. Current projects will also be impacted, because letters of credit are often extended (and will likely not be extended as a result of this fraudulent draw). *Id.* at ¶ 11. In short, the chain reaction that will be caused by Montague's fraudulent attempt to draw on the letter of credit threatens Sterling's ability to continue doing business.

*Id*. at ¶¶ 10–12.

Injunctive relief is warranted because payment pursuant to the BANA letter of credit would facilitate an intentional and material fraud and cause irreparable harm to Sterling. With an injunction, Sterling can further investigate what occurred and who the responsible parties are, and pursue necessary criminal and civil penalties, if applicable. A preliminary injunction will maintain the current status quo and cause no further damage while this investigation and communication between parties goes forward.

## III.   INJUNCTIVE RELIEF WILL NOT PREJUDICE BANA OR MONTAGUE

Further, the issuance of injunctive relief will not cause prejudice to either BANA or Montague. First and most simply, BANA cannot claim to be harmed in any respect if it is prevented from issuing the funds in question—indeed, it has little stake in the payment or non-payment of the letter of credit. Montague will also not be prejudiced. The letter of credit does not expire until September 30, 2023. Dastoor Decl. ¶ 3; Bhandari Decl. Ex. A, p. 17. Therefore, the funds will remain available during the pendency of Sterling's request for injunctive relief, and will certainly provide the Court with enough time to hold a preliminary injunction hearing.[4] Therefore, Montague will not bear any risk that the funds in question will be

---

[4] If necessary, Sterling is prepared to further extend the letter of credit.

unavailable.

## IV.   PUBLIC INTEREST

The issuance of injunctive relief is in the public interest. Contracting parties should not be required to do business in fear of fraudulent attempts to draw upon letters of credit. Further, at a minimum, the events underlying the Complaint are amongst private parties and thus the issuance of injunctive relief is not against the public interest. Therefore, the Court should grant injunctive relief.

<u>**CONCLUSION**</u>

For the foregoing reasons, Sterling respectfully requests that its motion be granted in its entirety.

Dated:  July 5, 2023                    Respectfully submitted,

**Sterling and Wilson Solar
Solutions Inc.**

/s/ Joseph V. Schaeffer
Joseph V. Schaeffer, Esquire
PA ID No. 323256
jschaeffer@babstcalland.com
Casey Alan Coyle, Esquire
ccoyle@babstcalland.com
PA ID No. 307712
BABST, CALLAND, CLEMENTS & ZOMNIR,
P.C.
Two Gateway Center, 6th Floor
603 Stanwix Street
Pittsburgh, PA 15222
(412) 394-5400 – Phone
(412) 394-6576 – Facsimile

David Dehoney, Esquire
NY ID No. 4616595
*pro hac vice forthcoming*
ddehoney@mrllp.com
MICHELMAN & ROBINSON, LLP
605 Third Ave., 30th Floor
New York, NY 10158
(212) 730-7700 – Phone
(212) 730-7725 – Facsimile

Seth Darmstadter, Esquire
IL ID No. 6284759
*pro hac vice forthcoming*
sdarmstadter@mrllp.com
Matthew R. Lasky, Esquire
IL ID No. 6318140
*pro hac vice forthcoming*
mlasky@mrllp.com
*pro hac vice forthcoming*
MICHELMAN & ROBINSON, LLP
1 North Wacker Dr., Suite 2180
Chicago, IL 60606
(312) 638-5671 – Phone
(312) 638-5672 – Facsimile

–13–

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on July 5, 2023, I filed the foregoing **BRIEF IN SUPPORT OF PLAINTIFF STERLING AND WILSON SOLAR SOLUTIONS INC.'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** with the Court's CM/ECF system and caused a copy of the same to be served in the following manner:

**Certified Mail**
Bank of America, N.A.
c/o CT Corporation System
600 North 2nd Street, Suite 401
Harrisburg, PA 17101

**First Class U.S. Mail, Postage Prepaid**
Bank of America, N.A.
Attn: General Counsel
Bank of America Corporate Center
100 North Tryon Street
Charlotte, NC 28255

/s/ Joseph V. Schaeffer
Joseph V. Schaeffer, Esquire
PA ID No. 323256
jschaeffer@babstcalland.com
BABST, CALLAND, CLEMENTS &
ZOMNIR, P.C.
Two Gateway Center, 6th Floor
603 Stanwix Street
Pittsburgh, PA 15222
(412) 394-5400 – Phone
(412) 394-6576 – Facsimile

–14–